UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHANNON BEERS,<br><br>    Plaintiff,<br><br>    v.<br><br>MENTOR ABI, LLC d/b/a<br>NEURORESTORATIVE MAINE,<br><br>    Defendant. | Civil Action No. |

COMPLAINT
(JURY TRIAL REQUESTED)

NOW COMES the Plaintiff, Shannon Beers ("Plaintiff" or "Ms. Beers"), by counsel, and complains against the Defendant, Mentor ABI, LLC d/b/a NeuroRestorative Maine ("Defendant" or "Mentor") as follows:

JURISDICTION AND PARTIES

1. This action arises under the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S. §§831 *et seq.*, as enforced through the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*, and common law contract law.

2. Plaintiff is a United States citizen residing in Sanford, Maine.

3. Defendant is a Delaware corporation with a principal place of business in Boston, Massachusetts which provides rehabilitation services, including supported and transitional living, for people with brain and spinal cord injuries and other neurological challenges.

4. Defendant employs thousands of employees in 36 States.

1

5. The amount in controversy exceeds $75,000.00.

6. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1332 and 1367.

7. Plaintiff has exhausted her administrative remedies with respect to MWPA or MHRA claims asserted set forth in this Complaint.

## JURY TRIAL REQUESTED

8. Plaintiff requests a trial by jury for all claims and issues.

## FACTUAL ALLEGATIONS

9. Between May 2017 and January 2018, Ms. Beers worked for Mentor as a Residential Supervisor at the so-called "KB House" in Kennebunk, Maine.

10. Mentor is a Massachusetts-based mental health care provider of rehabilitation services for individuals with disabilities in several states, including Maine. On its website, Mentor holds itself out as "America's largest and most experienced provider."

11. Beginning in June and July 2017 and through December 2017, Ms. Beers, who at all times was a "mandated reporter", reported to Mentor as well as to the Adult Protective Services division within the Maine Department of Health and Human Services ("DHHS") about conditions and practices at Mentor which she reasonably believed to be (i) illegal activities and repeated failures to comply with Maine regulations governing the care and supervision of individuals with disabilities residing at "Level VI" facilities, and (ii) conditions or practices which posed serious health and safety risks to KB House residents and staff.

12. In response to Ms. Beers' numerous reports, Mentor retaliated against her by, among other acts, subjecting her to unwarranted workplace hostility, making false and misleading claims that she violated Mentor policies or procedures or otherwise failed to meet Mentor performance expectations, threatening termination, and ultimately terminating her employment on January 5, 2018.

13. In December 2018, Ms. Beers started a new position as a Behavior Technician with a mental health service provider called "NeuroInternational." Though they were competitors and have similar names, NeuroInternational and Mentor d/b/a NeuroRestorative were not affiliated in any way <u>at that time</u>.

14. On January 27, 2019, Ms. Beers filed a civil action against Mentor in this Court docketed as *Beers v. Mentor ABI, LLC d/b/a Mentor Maine,* 19-cv-00046-LEW. The Complaint alleged retaliation in violation of the Maine Whistleblowers' Protection Act, 26 M.R.S. § 833 ("MWPA").

15. On March 15, 2019, Mentor filed counterclaims against Ms. Beers alleging (1) violation of 18 U.S.C. § 2520 (federal civil "wiretapping"), (2) 15 M.R.S. § 709 (state civil "wiretapping"), and (3) breach of contract (a non-disclosure agreement Ms. Beers signed as part of her employment with Mentor). These counterclaims, which were denied by Ms. Beers, are based on allegations that Ms. Beers unlawfully recorded oral discussions at work.

16. In August 2019, Ms. Beers agreed to settle her claims against Mentor at a Local Rule 83.11 Judicial Settlement Conference, and on December 3, 2019, the Court entered an Order dismissing the action. See 19-cv-00046-LEW, Doc. 31.

17. On December 5, 2019, Ms. Beers and Mentor executed the terms of settlement agreement, which is attached hereto as *Exhibit 1*. The Settlement Agreement required both parties to waive and release the opposing party from any and all claims and defenses "of any kind or nature whatsoever, whether asserted or unasserted, known or unknown, disclosed or undisclosed, suspected or unsuspected" that either party "now has or had at any time" from "the beginning of time through the date of the agreement". See *Exhibit 1* at ¶ 6. Each side agreed to never prosecute claims or defenses "arising from or incurred in connection with" Ms. Beers's employment with or separation from Mentor. *Id*.

18. That Ms. Beers was happily employed by NeuroInternational in 2019 was a major factor in her decision to settle with Mentor.

19. Mentor knew Ms. Beers was employed by NeuroInternational.

20. Paragraph 2B of the December 5, 2019 Settlement Agreement states:

> *2(B).  Ms. Beers understands, acknowledges and agrees that she will not be re-employed by Mentor, and does not possess any rights or claims to any future employment with Mentor, or its parent companies, subsidiaries, affiliates, divisions, predecessors, and/or successors.  Ms. Beers further promises, covenants and agrees that she will not apply for employment or otherwise seek to be hired, rehired, or reinstated by Mentor, or its **current** parent companies, subsidiaries, affiliates, divisions, predecessors, and/or successors.  Ms. Beers agrees that should she apply for employment with Mentor or its **current** parent companies, subsidiaries, affiliates, divisions, predecessors, and/or successors, Mentor or its **current** parent companies, subsidiaries, affiliates, divisions, predecessors, and/or successors shall have cause to deny Ms. Beers' application for employment without recourse and shall not be liable for any damages now or in the future for their refusal to employ Ms. Beers.*

See *Exhibit 1* at ¶ *2B*. (emphasis supplied).

21.     Prior to December 5, 2019, as Ms. Beers and Mentor were negotiating the Settlement Agreement, Ms. Beers and her attorney asked Mentor and its attorney for a list of all "current parent companies, subsidiaries, affiliates, divisions, predecessors, and/or successors." Mentor refused to provide such a list.

22.     When she signed the December 5, 2019 Settlement Agreement, Ms. Beers did not have any reason to believe that NeuroInternational was a "current parent, subsidiary, affiliate, or successor" of Mentor, and, upon information and belief, NeuroInternational was not, in fact, a "current parent, subsidiary, affiliate, division, predecessor, and/or successor" of Mentor as of December 5, 2019.

23.     Mentor paid all sums due under the Settlement Agreement on December 17, 2019.

24.     At some point in 2019, unbeknownst to Ms. Beers, Mentor and her then-current employer (NeuroInternational) were involved in negotiations whereby Mentor agreed to purchase the assets of NeuroInternational, including the acquisition of the residential facility at which Ms. Beers worked.

25.     The negotiations to acquire NeuroInternational's assets continued during the period of time between August and December 2019 when Ms. Beers and Mentor settled the case and executed the Settlement Agreement.

26.     Upon information and belief, Mentor completed the acquisition of NeuroInternational's assets on January 28, 2020.

27.     Mentor failed to disclose to Ms. Beers that it was in the process of acquiring, or had in fact acquired, NeuroInternational's assets.

28. Ms. Beers was unaware of any of the negotiations or transactions between Mentor and NeuroInternational until January 28, 2020, when she received an email entitled "Action Required: NH Employee WELCOME from Mentor HR". The email welcomed NeuroInternational employees to Mentor, represented that all employees were being offered "continued employment" subject only to a successful background check, and that NeuroInternational employees were required to attend a meeting at a local hotel in the very near future to finalize the process.

29. Until January 28, 2020, Ms. Beers had no reason to believe that her employment was in jeopardy.

30. Until January 29, 2020 Ms. Beers had no reason to believe that Mentor intended to attempt enforce the "no rehire" clause and terminate her for a second time, less than 45 days after executing the settlement agreement.

31. On January 29, 2020, Mentor, VP of Operations James Para-Creamer and HR Operations Manager Janet Conners called Ms. Beers to inform her that her employment was terminated.

32. Ms. Beers did not resign. Mentor terminated her employment on January 29, 2020.

33. Later that day, Ms. Beers received an email from Ms. Conners, which contained a proposed severance agreement, which stated in part:

> *As you now know from our meeting today, NeuroInternational Holdings, Inc. has been acquired by Mentor ABI, LLC. For the reasons discussed in our meeting today, your at-will employment with the Company is ending effective January 28, 2020.*

34. On February 14, 2020, Ms. Beers requested a copy of her personnel file and a written reason for the termination of her employment.

35. On March 19, 2020, through its lawyers, Mentor described the reason(s) for Ms. Beers' January 29, 2020 termination as follows:

> *Mentor ABI terminated Ms. Beers because Ms. Beers violated a Non-Disclosure Agreement and other policies and laws in making audio recordings and removing HIPAA-protected information during her employment with Mentor ABI; pursuant to the terms of the settlement agreement that she signed with Mentor ABI, she agreed that she did not have a right to future employment with Mentor ABI or any of its affiliated companies, which NeuroInternational is now; her sub-standard performance; and Ms. Beers's failure to comply with or meet the expectations set forth in Mentor ABI's policies and procedures.*

36. On October 5, 2020, in its response statement to the Maine Human Rights Commission, Mentor stated the following reasons for terminating Ms. Beers:

> *Upon acquiring NeuroInternaional, Mentor decided that, due after-acquired evidence of Complainant's misconduct at Mentor, her prior performance issues, as well as the "no re-hire" clause in her settlement agreement, Mentor would not continue Complainant's employment after its acquisition of NeuroInternational. Mentor's decision was based solely on the factors above and was no way unlawful or retaliatory.*

37. The proffered reasons for termination of Ms. Beers' employment are false, misleading, inaccurate, and were a pretext for Mentor's true motive and intent, i.e., further retaliation against Ms. Beers for engaging in protected activity and exercising her civil rights by filing complaints with the Maine Human Rights Commission and in U.S. District Court.

38. The proffered reasons for termination are inconsistent with, contradict, and violate the terms of the December 5, 2019 Settlement Agreement.

39. Had Mentor or its attorneys disclosed to Ms. Beers or her lawyer that it was in the process of acquiring NeuroInternational and that Ms. Beers would be fired immediately once the transaction closed, Ms. Beers and her attorney would have, either, not settled with Mentor, or would have taken a far different approach with respect to settlement at the Judicial Settlement Conference in August and with respect to the terms of settlement ultimately reached on December 5, 2019.

40. Mentor knew or should have known that Ms. Beers would not have settled with Mentor and/or would not have agreed to resign from NeuroInternational had Mentor disclosed, at the Judicial Settlement Conference or during settlement discussions, the fact that it was in the process of acquiring NeuroInternational's assets.

41. Prior to signing the December 5, 2019 Settlement Agreement and until January 28, 2020, Ms. Beers reasonably expected that she would continue her employment with NeuroInternational.

42. Mentor made false representations of facts and/or failed to disclose one or more material facts, with knowledge of its falsity or in reckless disregard of whether it is true or false, for the purpose of inducing Ms. Beers to act or to refrain from acting in reliance on it, and Ms. Beers justifiably relied on the representation as true and acts upon it to her damage.

43. Mentor's failure to disclose such material facts and critical information induced and caused Ms. Beers to compromise and settle her claims with Mentor and sign the Settlement Agreement.

## COUNT I: Retaliation in Violation of MHRA and MWPA

44. Paragraphs 1-43 are incorporated by reference.

45. By filing a complaint with the Maine Human Rights Commission in 2018 and a civil action in the U.S. District Court for the District of Maine in 2019, Ms. Beers engaged in activity protected by the Maine Whistleblowers' Protection Act and Maine Human Rights Act. 26 M.R.S. § 833(1)(C).

46. Ms. Beers was subjected to adverse employment action, namely, the termination of her employment on January 29, 2020.

47. Mentor was motivated to terminate Ms. Beers's employment, <u>for a second time</u>, in response to and as retaliation for her protected activity.

48. As a direct and proximate result of her termination, Ms. Beers sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from January 29, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## Count II: Fraud in the Inducement

49. Paragraphs 1-48 are incorporated by reference.

50. As set forth above, Mentor made false representations of facts and/or failed to disclose, one or more material facts, with knowledge of its falsity or in reckless disregard of whether it is true or false, for the purpose of inducing Ms. Beers to act or to refrain from acting in reliance on it, and Ms. Beers justifiably relied on the representation as true and acts upon it to her damage.

51. Mentor knew or should have known that Ms. Beers would not have settled with Mentor and/or would not have agreed to resign from NeuroInternational had Mentor disclosed the fact that it was in the process of acquiring NeuroInternational's assets.

52. Mentor's failure to disclose induced and caused Ms. Beers to compromise and settle her claims with Mentor and sign the Settlement Agreement.

53. As a direct and proximate cause of Mentor's fraud and failure to disclose, Ms. Beers sustained damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following relief:

A. A judicial declaration that the December 5, 2019 Settlement Agreement null and void as a matter of law;

B. Back pay and lost income from January 29, 2020 with prejudgment interest;

C. Compensatory and consequential damages, including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries flowing directly from Defendant's breach of contract;

D. An award of reasonable attorney's fees and all costs; and

E. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## Count III: Fraudulent Concealment

54. Paragraphs 1-53 are incorporated by reference.

55. Mentor had a legal or equitable obligation to disclose all material facts relevant to the rights, duties, and obligations of the parties to the December 5, 2019 Settlement Agreement.

56. Mentor failed to disclose one or more material facts to Ms. Beers during settlement discussions and negotiations and did so with the intention of inducing Ms. Beers act or to refrain from acting in reliance on its non-disclosures.

57. Mentor's failure to disclose such material facts in fact induced and caused Ms. Beers to compromise and settle claims with Mentor and sign the Settlement Agreement where she would not have done so had Mentor disclosed those facts to her prior to signing the Settlement Agreement.

58. As a direct and proximate cause of Mentor's concealment and failure to disclose, Ms. Beers sustained damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following relief:

A. A judicial declaration that the December 5, 2019 Settlement Agreement null and void as a matter of law;

B. Back pay and lost income from January 29, 2020 with prejudgment interest;

C. Compensatory and consequential damages, including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries flowing directly from Defendant's breach of contract;

D. An award of reasonable attorney's fees and all costs; and

E. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

## COUNT IV: Breach of Contract
## (Alternative Pleading)

59. Paragraphs 1-58 are incorporated by reference.

60. Should the Court or a jury determine that the December 5, 2019 Settlement Agreement was not procured by fraud and is thus not null and void as a matter of law, Plaintiff alleges that the December 5, 2019 Settlement Agreement was at all material times a valid and enforceable contract.

61. Among other acts or omissions, Mentor breached the terms of the December 5, 2019 Settlement Agreement by justifying unlawful action, wrongfully terminating Plaintiff's employment, and attempting to enforce the "no rehire" provisions set forth in ¶ 2B of the Agreement based on false, misleading, and/or undisclosed representations of fact, and based on allegations, assertions, claims, or defenses relating to or arising from Plaintiff's employment with Mentor, which were expressly waived and disclaimed by Mentor.

62. As a direct and proximate cause of Mentor's breaches of contract, Ms. Beers sustained damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following relief:

A. Back pay and lost income from January 29, 2020 with prejudgment interest;

B. Compensatory and consequential damages, including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries flowing directly from Defendant's breach of contract;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

**Dated:** June 25, 2021                                    Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)
*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com
CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200