UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SHANNON BEERS, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>MENTOR ABI LLC, )<br>)<br>Defendant ) | No. 2:21-cv-00171-LEW |

## ORDER ON MOTION TO DISMISS

Defendant Mentor ABI LLC ("Mentor") has moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Mot. Dismiss (ECF No. 8). For the reasons set forth below, the motion is granted.

### FACTS

Shannon Beers is a former employee of Mentor. Beers sued Mentor in this Court in 2019, alleging whistleblower retaliation and other claims. *Beers v. Mentor ABI LLC*, No. 2:19-cv-00046-LEW. The Court dismissed that matter in December of 2019 after the parties agreed to settle the case. As part of their settlement, the parties agreed that Beers would never again work for Mentor or its affiliates. Their settlement agreement ("Agreement") included the following "do not darken my door"[1] provision:

> Ms. Beers understands, acknowledges and agrees that she will not be re-employed by Mentor, and does not possess any rights or claims to any future

---

[1] The parties refer to the provision as a "no rehire" provision, but in fact the provision contains three covenants: (1) no rehire in the context of the litigation; (2) no right to future employment; and (3) a promise not to apply.

> employment with Mentor, or its parent companies, subsidiaries, affiliates, divisions, predecessors and/or successors. Ms. Beers further promises, covenants and agrees that she will not apply for employment or otherwise seek to be hired, rehired, or reinstated by Mentor, or its current parent companies, subsidiaries, affiliates, divisions, predecessors and/or successors. Ms. Beers agrees that should she apply for employment with Mentor or its current parent companies, subsidiaries, affiliates, divisions, predecessors and/or successors, Mentor or its current parent companies, subsidiaries, affiliates, divisions, predecessors and/or successors shall have cause to deny Ms. Beers' application for employment without recourse and shall not be liable for any damages now or in the future for their refusal to employ Ms. Beers.

Agreement ¶ 2.B (ECF 1-1).

In December of 2019, when the parties executed the Agreement, Beers was employed by a company named NeuroInternational, working at a facility located in New Hampshire. Unbeknownst to Beers, Mentor was then engaged in negotiations aimed at acquiring assets held by NeuroInternational, including the facility where Beers worked. In January of 2020, Mentor did just that. Mentor's transaction with NeuroInternational included not only the NH facility, but also its existing employees. Another plausible inference, based on the pleadings, is that Mentor purchased NeuroInternational outright such that it became a Mentor affiliate or subsidiary.

During the process of negotiating their settlement of the 2019 action, Mentor did not disclose to Beers that it was attempting to acquire some or all of NeuroInternational's assets or operations. Before she executed the agreement, Beers requested of Mentor that it disclose to her the entire list of its then-existing parents, subsidiaries, affiliates, divisions, and predecessors, but Mentor declined her request.[2] Beers nonetheless executed the

---

[2] Even if Mentor had answered the question, Beers would not have learned of planned future acquisitions.

Agreement.

On January 29, 2020, Mentor management called Beers and informed her that her employment with NeuroInternational was terminated. Later that day she received an e-mail to like effect. In March of 2020, through counsel, Mentor explained that it terminated her employment based, in part, on the section 2B of the Agreement stating Beers did not have a right to future employment "with Mentor ABI or any of its affiliated companies, which NeuroInternational is now." Compl. ¶ 35 (ECF No. 1). Mentor also stated that it terminated Beers' employment because of alleged misdeeds she engaged in during her employment with Mentor.

Based on the foregoing facts, Beers alleges that Mentor is liable to her on the following counts:

(I) retaliation for her earlier alleged protected activity (filing the prior civil action in this Court), in violation of the Maine Human Rights Act and Maine Whistleblower Protection Act;

(II) fraud in the inducement;

(III) fraudulent concealment; and

(IV) as an "alternative" to her fraud claims, breach of the settlement agreement.

## DISCUSSION

Mentor contends that Beers' fails to state a claim for relief. Mot. Dismiss 6. To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the facts viewed in the light most favorable to the plaintiffs do not show or permit a

reasonable inference that the defendant is liable to the plaintiff, dismissal of the complaint is appropriate. *Id.* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Fed. R. Civ. P. 12(b)(6).

In its review of a motion to dismiss, a court may consider, under appropriate circumstances, the factual and legal significance of a document integrated into the complaint, whether it is attached to the complaint or not. *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 716-17 (1st Cir. 2014). Here, appropriate circumstances exists for integrating the terms of the parties's Agreement because Ms. Beers filed the Agreement as an exhibit to her complaint and its content informs her claims. *See*, *e.g.*, Compl. ¶ 17.

### A. Count I – Retaliation

In Count I, Beers alleges that Mentor's decision to fire her in 2020 was based on retaliatory animus arising out of the 2019 litigation. Compl. ¶¶ 45-47. In its Motion, Mentor argues that the retaliation claim, which relies on and cites only Maine law, is not viable as a matter of law given that Beers' employment in 2020 was in New Hampshire, not Maine. Motion to Dismiss 13-15. Mentor also argues that Beers' should be estopped from asserting the claim given her voluntary execution of the Agreement that authorized Mentor to terminate her employment. *Id.* 15-16. Mentor's first argument suffices to support the dismissal of Count I.

Plaintiff relies on Maine law to make out her retaliation claim, but the Maine laws that Plaintiff cites do not apply to employment actions taken outside Maine. Courts

presume that state statutes do not have extraterritorial application absent a statutory provision that clearly and explicitly states otherwise. *Judkins v. Saint Joseph's College of Maine*, 483 F. Supp. 2d 60, 65 (D. Me. 2007). The Maine Human Rights Act ("MHRA") and Maine Whistleblower Protection Act ("MWPA") do not suggest by their language that they are meant to have extraterritorial application. Moreover, other provisions of the MHRA suggest that the Legislature intended to limit the reach of the MHRA and MWPA to Maine insofar as the MHRA restricts the Maine Human Rights Commission to "investigating conditions and practices within the State." 5 M.R.S. § 4566. Here, although Beers is a Maine resident, her employment with NeuroInternational was in New Hampshire. Consequently, her statutory employment rights are governed by New Hampshire law, not Maine law.

Beers argues that, although the MHRA and MWPA generally do not apply extraterritorially, the Agreement expressly provides that Maine law should govern this dispute. Specifically, Beers points to the Agreement's forum selection clause, which provides that disputes arising under the Agreement will be "subject to the exclusive jurisdiction of" Maine state and federal courts. Pl.'s Opp'n. 11 (ECF No. 9) (quoting Agreement § 26). The Agreement also contains a choice-of-law clause, though Beers does not rely on it, which provides that Maine law shall govern disputes arising from the Agreement. *See id.* [3]

---

[3] These provisions are set forth in the following language:

> 26. This Agreement and any disputes arising in connection with itshall be construed and governed in accordance with the laws of theState of Maine. Any dispute arising under or

(continued next page)

Unfortunately for Beers, her retaliation claim is premised on statutory law, not the Agreement. Nothing in the Agreement suggests that Mentor's actions in terminating Beers' employment contravene its terms. Thus, the venue selection and choice-of-law terms are not operative in the context of Count I. These terms simply provide that a dispute related to the Agreement, such as a dispute over Beers' fraud and breach of contract claims, will be litigated in a Maine court and determined based on an application of Maine law. They do not dictate that Maine human rights law governs the lawfulness of Beers' later termination for other employment in New Hampshire. *See*, *e.g.*, *Heskiaoff v. Sling Media*, *Inc.*, 719 F. App'x 28, 31 (2d Cir. 2017); *Nuzzi v. Aupaircare*, *Inc.*, 341 F. App'x 850, 852 (3d Cir. 2009).

Because the MHRA and MWPA do not govern the terms and conditions of Beers' employment in New Hampshire, dismissal of Count I is appropriate.

**B. Counts II & III – Fraud in the Inducement and Fraudulent Concealment**

Beers alleges that the Agreement is voidable because it was the product of fraud. Specifically, she maintains that Mentor should have disclosed to her that it was working to acquire NeuroInternational, since Mentor knew that she was employed there when the parties entered into their Agreement and that the language of section 2B of the agreement could result in her discharge if the acquisition went through. To support her fraud claims, Beers must establish that she agreed to the provision because she relied on a fraudulent

---

in connection with this Agreement or related to any matter which is the subject of the Agreement shall be subject to the exclusive jurisdiction of the state and/or federal courts located in Maine.

Agreement § 26.

statement or omission that was designed or intended to mislead her. *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286 (fraud in the inducement); *Picher v. Roman Cath. Bishop of Portland*, 2009 ME 67, ¶ 30, 974 A.2d 286, 295 (fraudulent concealment).

Mentor observes that Beers' fraud allegations do not suggest that Mentor misrepresented a fact to Beers and that, consequently, Beers must allege facts that would support the conclusion that Mentor had a legal duty to disclose to Beers that it was attempting to acquire NeuroInternational. Mot. Dismiss 6-10. Beers agrees, but she says that even though the existence of a duty to disclose is a legal issue, the existence of a special relationship that would generate the duty to disclose is an issue of fact on which she should be allowed to conduct discovery. Pl.'s Opp'n 6-7.

To state a claim of fraud where no affirmative misrepresentation is in issue, Beers much allege facts capable of supporting a plausible inference that she and Mentor were in a "special relationship." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶¶ 22-23, 819 A.2d 1014, 1026. "Generally, in such a relationship, where the defendant knows particular facts and does not disclose them causing the plaintiff to rely on those facts, an inference of fraud is appropriate." *Id.* ¶ 23. In a contractual setting, a special relationship ordinarily is limited to a fiduciary or confidential relationship, not an arm's length relationship like that of an employer and employee, unless the arm's length relationship triggers a statutory duty to disclose. *See, e.g., id.* at 1026 (doctor-patient relationship); *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117, 120 (corporate officer's fiduciary obligations to the corporation he serves); *Binette v. Dyer Libr. Ass'n*, 688 A.2d 898, 903 (Me. 1996) (statutory duty to disclose); *Anderson v. Neal*, 428 A.2d 1189, 1191 (Me. 1981) (attorney-

7

client relationship).[4]

As Beers correctly argues, whether a special relationship turns on issues of fact. *See H.E.P. Dev. Grp., Inc. v. Nelson*, 606 A.2d 774, 775 (Me. 1992). However, Beers has not alleged the kind of facts that would make it plausible to infer that she was in a special relationship with Mentor when she executed the Agreement. To the contrary, when the parties entered into their Agreement they were openly adverse to each other. Moreover, the underlying relationship was only that of employer and employee. Certainly there is nothing in Beers' complaint that would warrant drawing an inference that she placed "trust and confidence" in Mentor during her employment, let alone during the parties' settlement negotiations. *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 157 (1st Cir. 2011) (citing *Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 457–58 (Me. 1993) (affirming dismissal of a claim becasue "plaintiffs' facts do not make out a confidential relationship")). Nor is there cause to infer "an especially heightened disparity of power," *id.*, meaning facts that would suggest Beers was "diminished" emotionally or physically when it came to

---

[4] Beers cites *Mansir v United States*, 299 F. Supp. 3d 203, 213 (D. Me. 2018), and *Estate of Cummings v. Davie*, 2012 ME 43, 40 A.3d 971, for the proposition that the employer-employee relationship is a special relationship giving rise to an affirmative duty to aid and protect. Pl.'s Opp'n 7. However, the duty to aid and protect discussed in *Cummings* is a function of negligence law and, more narrowly still, the duty of care associated with premises liability. *See* Restatement (Second) of Torts § 314A (1965) (cited as persuasive authority in *Estate of Cummings*). *See also Brown v. Delta Tau Delta*, 2015 ME 75, ¶¶ 9-10, 118 A.3d 789, 792  By contrast, the present case involves the parties' duties to one another when engaged in contracting. And even in the tort context, the rule is not uniform. For example, a special relationship between parties can support a claim for negligent infliction of emotional distress, but in that context "[t]he employer-employee relationship does not qualify as a special relationship." *Fisk v. Mid Coast Presbyterian Church*, No. 2:16-CV-00490-JDL, 2017 WL 1755950, at *8 (D. Me. May 4, 2017) (citing *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 52 (D. Me. 2010)).

negotiating with Mentor, her former employer, *id.*[5]

When assessing a conclusory legal allegation about a duty to disclose, *see* Compl. ¶ 55, and whether the related factual allegations might generate a plausible inference of liability on that basis, a court may "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, given the nature of the relationship depicted in the complaint's factual allegations concerning the history of Beers' employment and the prior litigation, Beers' assertion that Mentor owed her a duty to disclose fails to clear the plausibility hurdle.

### C. Count IV – Breach of Contract (Alternative Pleading)

Finally, as an alternative[6] to her fraud claims, Beers alleges that Mentor breached the Agreement when it caused her employment with NeuroInternational to end. Beers argues that her termination was wrongful because, in her view, section 2B of the Agreement—which Mentor cited as a basis for her termination—does not apply, and that the Agreement's Release of Claims provision bars Mentor from firing her based on its actual motivation, namely her alleged past misdeeds as a Mentor employee. Compl. ¶ 61.[7]

---

[5] Beers was represented by counsel during the negotiation process, which fact tends to further dilute her claim.

[6] Evidently Beers describes the contract claim as an alternative because she believes the fraud claims, if successful, would void the entire settlement agreement.

[7] Beers' allegation of breach reads:

> Among other acts or omissions, Mentor breached the terms of the December 5, 2019 Settlement Agreement by justifying unlawful action, wrongfully terminating Plaintiff's employment, and attempting to enforce the 'no rehire' provisions set forth in ¶ 2B of the Agreement based on false, misleading, and/or undisclosed representations of fact, and

*(continued next page)*

Concerning the matter of the Agreement's mutual release language, Agreement §§ 3C & 6, the release of legal claims does not act in the manner Beers suggests, *i.e.*, as the waiver of the right to base a future termination on perceived past misdeeds. It merely served to effectuate a mutual releases of all claims of legal liability arising out of the circumstances associated with the parties' prior litigation.[8] Nothing in any of Beers' filings supports a claim that Mentor is liable to her for breach of a release provision.

Concerning the meaning and import of section 2B, containing the no-future-employment and no-rehire language, Mentor argues that the plain language of section 2B entitled Mentor to terminate Beers' employment given that it owned NeuroInternational when it did so. Mot. Dismiss 10-13; Def.'s Reply 4 (ECF No. 10). Beers, on the other hand, contends Mentor breached the provision because the provision only applied in the event Beers sought employment with an entity that was affiliated with Mentor on the date of the parties' Agreement. Pl.'s Opp'n 8-10.

As a matter of law, unambiguous contract language is construed according to its plain meaning. *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400, 403. "A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the

---

> based on allegations, assertions, claims, or defenses relating to or arising from Plaintiff's employment with Mentor, which were expressly waived and disclaimed by Mentor.

Compl. ¶ 61.

[8] The Agreement's protracted release language concludes with a clause retaining rights arising under the Agreement: "… this release shall not release or otherwise affect or limit the rights and obligations of the Parties arising out of this Agreement." Agreement § 6.

agreement, as well as the object to be accomplished." *Handy Boat Serv., Inc. v. Pro. Servs., Inc.*, 1998 ME 134, ¶ 7, 711 A.2d 1306, 1308.

The plain language of § 2B shows that the provision applies to affiliates and subsidiaries whose relationships with Mentor post-dates the Agreement. Section 2B states that Beers "will not be re-employed by Mentor, and does not possess any rights or claims <u>to any future employment with Mentor, or its parent companies, subsidiaries, affiliates, divisions, predecessors and/or successors</u>." Agreement ¶ 2.B (emphasis added). The emphasized language sets forth a clear and unmistakable waiver or relinquishment, by Beers, of any right to future employment with Mentor or one of its affiliates. Although later sentences in section 2B apply only to Mentor's "current" affiliates, these sentences all begin with language indicating that they are "further promises," meaning that they function as additions to rather than limitations on the first sentence. Reading the contract in the manner Beers proposes would render the use of "further promises" meaningless and would dilute the broad waiver of any future employment based on a separate promise not to apply for employment with then-existing affiliates. A contract should "be construed to give force and effect to all of its provisions," *Acadia Ins. Co. v. Buck Const. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515, 517, "avoid[ing] an interpretation that renders meaningless any particular provision in the contract," *SC Testing Tech., Inc. v. Department of Envtl. Protection*, 688 A.2d 421, 424 (Me.1996).

Because Beers agreed to forego any right or claim to future employment with

Mentor or its affiliates, she fails to state a claim for breach of the Agreement.[9]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Plaintiff's complaint is DISMISSED.

**SO ORDERED.**

Dated this 20th day of December, 2021.

/s/ Lance E. Walker
**UNITED STATES DISTRICT JUDGE**

---

[9] Even if Beers were correct that the Agreement did not authorize her termination from NeuroInternational without recourse, there is nothing to suggest that the agreement required her retention. Thus even under such a construction, terminating Beers—an at-will employee, *see* Pl.'s Opp'n 4—would not give rise to a breach of contract claim.